IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | |
| | * | **Criminal No. SAG-23-022** |
| **JUSTIN ERNEST RIGGS,** | * | |
| | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY REGARDING MOTION TO SUPPRESS STATEMENTS

This Court should suppress statements obtained through a constitutionally defective hybrid *Miranda*/*Garrity* warning, which created irreconcilable confusion about whether Mr. Riggs' statements would be protected from criminal prosecution or could be used against him. In its response the government failed to demonstrate either that the hybrid warning adequately conveyed Mr. Riggs' constitutional rights or that he knowingly and intelligently waived those rights.

### I.   The Government's Defense of the Hybrid Warning Failed to Address Its Constitutional Defects

The Government has failed to identify any Fourth Circuit authority specifically addressing the hybrid warning provided in this case. Counsel has not uncovered precedential authority involving a similar warning in this circuit. However, federal courts have recognized that combining *Miranda* and *Garrity* creates conceptual issues that cannot be easily disentangled and warrant suppression. *See United States v. Friedrick*, 842 F.2d 382 (D.C. Cir. 1988); *United States v. Camacho*, 739 F.Supp. 1504 (S.D. Fla. 1990). The constitutional problem stems from the impossibility of reconciling contradictory messages about whether statements are compelled and will be protected or could be used criminally.

1

The Government's response misreads the constitutional defect in the hybrid warning administered to Mr. Riggs. Instead of engaging with the argument that the combined warning created inherent confusion about the consequences of speaking, the Government functionally made three flawed arguments.

First, the Government suggests that because the FBI did not employ Mr. Riggs, but the officers who questioned him were part of a FBI task force, the combined warning is not defective. Gov't Response, ECF No. 48 at 9-10. This misses the point. The constitutional defect stems not from whether a *Garrity* warning was required, but from how the government's choice to include *Garrity* language created irreconcilable confusion about the consequences of speaking. *United States v. Friedrick* is illustrative. Like Mr. Riggs, Friedrick was a law enforcement officer interviewed by federal agents about potential misconduct while still employed. The agents similarly combined administrative and criminal warnings while leaving his employment status uncertain. Most importantly, Friedrick, like Mr. Riggs, faced fundamental confusion about whether his statements would be protected under *Garrity* or used against him criminally. The D.C. Circuit found that Friedrick was prevented from reasonably discerning "his 'true' status" where he was ordered to appear for questioning, warranting suppression. 842 F.2d at 400. This analysis applied even though, like Mr. Riggs, Friedrick understood his rights and invited continued questioning. *Id*. at 400 n.20. Here, the Government failed to explain how a suspect could reconcile the contradictory messages in the hybrid warning about the consequences of speaking.

Second, the Government contends that the warnings "were not in conflict with each other" because there was no "administrative consequence or penalty" threatened. Gov't Response, ECF No. 48 at 10. But courts have rejected this argument, recognizing that "[s]ubtle

pressures may be as telling as coarse and vulgar ones" when analyzing compulsion. *United States v. Camacho*, 739 F.Supp. 1504, 1512 (S.D. Fla. 1990) (quoting *Hester v. City of Milledgeville*, 777 F.2d 1492, 1495 (11th Cir.1985), which cites *Garrity*). Indeed Mr. Riggs was arrested at the police station where he was employed. As in *Friedrick*, Mr. Riggs remained an employee whose job status was uncertain at the time of questioning. *See* 842 F.2d at 399 ("[u]ntil the FBI treated him as other than an employee—or even intimated that his employee status was in jeopardy—[the defendant's] belief that the interview was compelled . . . remained reasonable.")

Third, the Government suggests Mr. Riggs' law enforcement background cured any confusion. Gov't Response, ECF No. 48 at 11. The opposite is true. As a trained officer, Mr. Riggs would have understood that *Miranda* and *Garrity* operate independently and serve different purposes. His professional experience would have taught him that statements procured under the threat of job loss, and protected under *Garrity*, cannot be used criminally, while statements following *Miranda* warnings can be. The fact that he gained this knowledge through his training and experience does not eradicate the coercive effect of facing contradictory warnings about the use of his statements. *Miranda* warnings must effectively convey to suspects their fundamental constitutional rights, though not through any rigidly proscribed formula. *See United States v. Frankson*, 83 F.3d 79, 81-82 (4th Cir. 1996). By combining inherently contradictory doctrines about the use of statements in criminal proceedings, the warning failed that fundamental requirement.

Fourth, the Government's attempt to distinguish *Seibert* underscores the constitutional violation here. *See Missouri v. Seibert*, 542 U.S. 600 (2004). Just as *Seibert* condemned police practices that created confusion about *Miranda* rights through sequential questioning, the hybrid

3

warning created similar confusion through its combined structure, which involved a single form and a combined colloquy. In both cases, law enforcement's chosen procedure undermined *Miranda's* core purpose of ensuring suspects understand the consequences of speaking. The fact that this confusion was created through combining warnings, rather than sequential questioning, makes it equally problematic, as it infected the entire interaction between Mr. Riggs and the agents from the outset.

## II.     The Government's Defense of Mr. Riggs' Purported Waiver Fails

The government bears the burden of proving a valid waiver of Miranda rights by a preponderance. *See*, *e.g.*, *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). Here, the record reveals Mr. Riggs never validly waived his rights because he focused on the ability to stop questioning, rather than on understanding the consequences of speaking. When asked if he would speak, Mr. Riggs responded only by confirming he could end the interview, asking: "I mean, honestly, you can say I'll talk to you because I can stop at any time, right?" Ex. 1. This limited understanding falls far short of the knowing and intelligent waiver that *Miranda* requires.

The Supreme Court has made clear that valid waiver requires "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (requiring the government to establish "both an uncoerced choice and the requisite level of comprehension"). Mr. Riggs' statements show he grasped neither. Nothing in the record suggests he comprehended the consequences of speaking given the hybrid warning's contradictory messages about how his statements could be used.

The D.C. Circuit's analysis in *Friedrick* is applicable. There, as here, the accused faced fundamental uncertainty about whether his statements would be protected or used against him criminally. The court held that in such circumstances, where there was confusion about the

consequences of speaking, even an experienced law enforcement officer could not make a knowing and intelligent waiver. *See Friedrick*, 842 F.2d at 395-99. The same analysis applies here.

On these facts with this waiver, the defense respectfully submits the government cannot meet its burden through Mr. Riggs' non-verbal responses or even his signature on the form. His perfunctory "Mhmm" responses cannot transform the confusing, hybrid warning into the kind of comprehension *Miranda* demands. No valid waiver can occur when the warning itself precludes the required "full awareness" of consequences. *Moran*, 475 U.S. at 421.

## **CONCLUSION**

By combining inherently contradictory doctrines about the consequences of speaking, the hybrid warning prevented Mr. Riggs from making an informed choice about whether to provide statements that could be used against him. His law enforcement background and apparent willingness to speak did not cure this fundamental defect. Because the government cannot demonstrate that the warning adequately conveyed Mr. Riggs' rights or that he knowingly waived them, his statements must be suppressed.

        Respectfully submitted,

        JAMES WYDA
        Federal Public Defender
        _____/s/_____
        ANDY SZEKELY
        ERIC PILCH
        Assistant Federal Public Defenders
        100 S. Charles Street
        Tower II, 9th Floor
        Baltimore, MD 21201
        (410) 962-3692
        Email: andrew_szekely@fd.org
               eric_pilch@fd.org